UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DOUGLAS COWGILL,<br><br>                Plaintiff,<br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>                Defendant. | CASE NO. C08-5659BHS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for September 11, 2009 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Douglas Cowgill was born in 1958. He dropped out of high school and joined the U.S. Navy in 1975. He has never married and has no children. Plaintiff last worked for a

REPORT AND RECOMMENDATION - 1

construction company in January of 2000. He has worked in the past at a lumber mill and as a plumber's helper. He also once owned and managed a small video and bookstore.

On March 1, 2005, Plaintiff filed an application for supplemental social security income benefits, alleging disability beginning February 19, 2005. Plaintiff alleges disability:

> [B]ased on a combination of impairments, including the following: need to lay down most of every day; frequent nausea and vomiting because of morphine and vicodin medicine; depression and suicidal ideations that occur a few days each month when his medicines wear off and he is out of his monthly prescribed dosage; diminished concentration and ability to read because of prescription narcotics; chronic back pain with radiculopathy in the buttocks area; ability to perform roughly one task each day and then be nonfunctional for the remainder of the day and evening; trouble walking, standing, and sitting; remaining mentally confused or foggy because of the high levels of morphine he consumes daily; because of the medicine, he is unable to drive or operate a motor vehicle; status post surgery on his dominant left thumb because of a lacerated tendon, (surgery required removal of a tendon from his dominant left index finger and placement into his left thumb); arthritis of his fingers; status post frostbite of his bilateral fingers causing numbness in his fingers most of the time and making it difficult to pick up, hold, or grip small items. (Tr. 266-287, 300-303).

Plaintiff's Opening Brief (Doc. 13) at 2-3.

The matter was assigned to an administrative law judge ("ALJ"), and an administrative hearing was held on June 21, 2007. Tr. 256-304. Plaintiff and Ms. Kathleen O'Gieblyn, a vocational expert, testified at the hearing. The ALJ reviewed the evidence, and on July 24, 2007, he issued an unfavorable decision, finding that Plaintiff retained the ability to perform past relevant work, and because he could perform other work that existed in significant numbers in the national economy. Tr. 10-20. On September 1, 2008, the Administration's Appeals Council denied Plaintiff's request for review (Tr. 5-8), thereby making the ALJ's decision the final administrative decision. 20 C.F.R. § 416.1481 (2008).

Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff specifically argues the ALJ's findings at steps four and five are not properly supported by

REPORT AND RECOMMENDATION - 2

substantial evidence and the ALJ based his findings on improper legal standards. Plaintiff's Opening Brief at 8. In this context Plaintiff argues: (i) the ALJ failed to properly develop the record; (ii) the ALJ failed to consider Dr. Northway's assessment; (iii) the ALJ improperly rejected Plaintiff's testimony; and (iv) the ALJ failed to pose complete and proper hypothetical to the vocational expert.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the

Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering his or her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## DISCUSSION

### A. The ALJ Properly Developed The Record

The ALJ "has an independent 'duty to fully and fairly develop the record.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). When a social security claimant is not represented by counsel, it is "'incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (*per curiam*) (*quoting* Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). However, the ALJ's duty to supplement the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150

Plaintiff argues the ALJ failed to ask "a single doctor of the significance of the impairments." Plaintiff's Opening Brief at 8. Plaintiff specifically asserts the ALJ "should have asked for Plaintiff to be evaluated Plaintiff's hands/fingers impairments" and should have further developed the record regarding Plaintiff's mental impairments. *Id*. at 10-12.

Here, Plaintiff was represented by counsel at the administrative level and the evidence regarding presented was not ambiguous or vague. First, the court notes and Plaintiff admits that "no physician in the record spoke of Plaintiff's hands/fingers impairments." *Id*. at 10. It is not the ALJ's duty to provide evidence to prove disability. It was Mr. Cowgill's duty to prove that

REPORT AND RECOMMENDATION - 4

he was disabled. *See* 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). The Code of Federal Regulations explains:

> you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a). Plaintiff must provide medical evidence showing that he has an impairment and how severe it is during the time he alleges he was disabled. 20 C.F.R. § 404.1512(c).

Mr. Cowgill notes that there is no medical record related to his alleged hands/fingers impairments, and thus, he did not provide the ALJ with any medical evidence to support the claim. The primary evidence in the record supporting a hand/finger impairment is Plaintiff's allegations and testimony, which, as discussed below, the ALJ properly discredited. Moreover, the consultative examiner, Dr. Horner, specifically found that Plaintiff had no manipulative limitations on examination (Tr. 188), and the state agency physicians agreed that Plaintiff had no manipulative limitations (Tr. 218, 223).

Plaintiff failed to supply any medical record to support his allegations of a hand/finger impairment. The record did not present ambiguous evidence, and therefore, the ALJ did not err when he did not further develop the medical record regarding Plaintiff's hand/finger impairment(s).

The ALJ similarly did not err when he allegedly failed to develop the record regarding Plaintiff's mental impairments. Plaintiff argues the ALJ failed to consider the psychological

REPORT AND RECOMMENDATION - 5

testing performed by Dr. Northway, which suggested that Plaintiff might have some cognitive limitation. Tr. 184. As fully discussed below, the ALJ properly evaluated the medical evidence regarding Plaintiff's alleged mental impairments. The evidence presented was sufficient to allow the ALJ to make a reasoned decision. The court finds no error in the ALJ's development of the record in this matter.

*B. The ALJ Properly Evaluated Dr. Northway's Opinion*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial

REPORT AND RECOMMENDATION - 6

evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ may not, however, substitute his or her own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians, and on testimony from the claimant that conflicted with the treating physician's opinion.

Plaintiff alleges the ALJ "failed to fully consider Dr. Northway's assessment by ignoring Dr. Northway's determination that Mr. Cowgill had a GAF score of 50, which was indicative of disabling mental impairments." Plaintiff's Opening Brief at 13. On review, the court finds the ALJ specifically addressed Dr. Northway's GAF score, and the undersigned finds no merit in Plaintiff's claim. The ALJ properly considered the medical evidence related to Plaintiff's alleged mental impairment(s), finding no severe impairment.

After reviewing the medical evidence, the ALJ found Plaintiff had one severe impairment: degenerative disc disease of the lumbar spine. The ALJ then immediately addressed Plaintiff's claim of disability due, in part, to mental impairments. He wrote:

> The claimant alleges disability in part due to his mental impairments. The record indicates that the claimant is on no prescription or counseling treatment. The VA records indicate that the claimant refused antidepressant medication treatment reporting that he was able to control his symptomatology (Exhibits 6F; 7F). The claimant reported to Peder Horner, M.D., during his orthopedic evaluation that his depression symptoms were secondary to his underlying pain and decreased abilities related thereto (Exhibit C4F/1).
>
> David Northway, Ph.D., conducted a psychodiagnostic evaluation of the claimant in April 2005 (Exhibit C3F/1-5). The claimant was diagnosed with recurrent major depressive disorder; pain disorder; and personality disorder (Exhibit C3F/5). The claimant was assigned a Global Assessment of Functioning (GAF) score of 50, indicating serious symptoms (Exhibit C3/5). This GAF score included consideration for the claimant's inadequate housing and finances; inadequate access to medical care; and problems with his transportation (Id). Dr. Northway's evaluation report indicates that he relied on uncorroborated self-reports presented by the claimant (Exhibit C3F/1). The reviewing State Disability Determination Services (DDS) medical consultant assessed that the serious symptoms indicative of the GAF score was more related to situational stressors (Exhibit C7F/13). DDS found the claimant's mental impairments nonsevere.
>
> After review of the record, which includes VA records since the alleged onset date that only reflect dysthymia as the claimant's mental diagnosis, the undersigned give full weight to the DDS findings. The claimant's allegations of mental symptomatology are nonsevere such that his ability to work at the competitive level would not be affected.

Tr. 15-16.

As shown above, the ALJ specifically acknowledged Dr. Northway's GAF assessment and rejected in favor of the DDS findings. The ALJ gave clear and convincing reasons to reject the opinions of Dr. Northway, an examining psychologist (Tr. 15, 180-84). As noted above, Dr. Northway's opinions were based on Plaintiff's "uncorroborated self-reports", which—as discussed below — the ALJ properly discounted. An ALJ may reject medical opinions that are

REPORT AND RECOMMENDATION - 8

based on a claimant's non-credible subjective complaints. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Morgan v. Apfel, 169 F.3d 595, 602 (9th Cir. 1999)

Plaintiff argues that the ALJ erred in not giving more weight to the comment made by one of the DDS consultant, Dr. Smith, who noted that she would assess Plaintiff's social functioning as "moderately impaired" (Tr. 212). The ALJ reasonably interpreted Dr. Smith's comment which states, "I would have rated social functioning as more moderately impaired, as opposed to mildly impaired. However, this will not make a decisional difference, so the PRTF will be signed as is." Tr. 212. The ALJ reasonably relied on the DDS decision, which unambiguously concludes Plaintiff's mental impairments are non-severe.

## C. The ALJ Properly Assessed Plaintiff's Credibility

Credibility determinations are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, he must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (*en banc*). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and

convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1284; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." Greger, 464 F.3d at 972 (*internal quotation omitted*). General findings are insufficient. Smolen, 80 F.3d at 1284; Reddick, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony or between her testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Smolen, 80 F.3d at 1284.

Here, the ALJ provided clear and convincing reasons to discredit Plaintiff's statements and testimony. First, the ALJ noted inconsistencies with the medical evidence of record. The ALJ specifically relied on an x-ray in May 2005, which showed only a "[m]ild degenerative lumbar change with slight narrowing at L5-S1 interspace without compression or focal destruction of pedicles." Tr. 189, 192. The ALJ further noted medical records from the Veterans Administration (VA) showed that Plaintiff's symptoms improved on morphine (Tr. 235). The x-ray is inconsistent with Plaintiff's statements that his lumbar pain is so severe that he must lay down 23 hours per day (Tr. 17, 84, 110, 158, 266); and the VA records do not support Plaintiff's allegation that he is unable to concentrate when he is using morphine and that becomes suicidal when he runs out of his narcotic prescriptions at the end of each month (Tr. 17, 275, 281-82).

The ALJ further observed that Plaintiff made other inconsistent statements, including statements made on two different forms that Plaintiff completed on consecutive days. Tr. 18. In a Function Report on March 14, 2005, Plaintiff reported that it took him "over [an] hour to walk" seven blocks to the grocery store. Tr. 18, 101. In contrast, on a Pain Questionnaire completed the following day, on March 15, 2005, Plaintiff reported that he could be active for 5 to 10 minutes before needing to rest (Tr. 18, 110), and that he could walk for ¼ to ½ of a mile before needing to rest (Tr. 18, 111). The ALJ further noted that Plaintiff had walked to his psychological consultative examination in April 2005 (Tr. 17, 180), as well as to his administrative hearing before the ALJ (Tr. 17, 279).

The ALJ further discredited Plaintiff based on Plaintiff's refusal to be treated for alleged mental impairments. Tr. 15. The ALJ specifically noted Plaintiff was on "no prescription or counseling treatment" for his alleged mental impairments (Tr. 15), and Plaintiff twice refused medication and counseling (Tr. 236, 239).

In conclusion, the ALJ provided clear and convincing reasons to discredit Plaintiff's statements regarding the nature of and the severity of his physical and mental limitations.

### D. *The ALJ Properly Completed Step-Five Of The Administrative Process*

The Social Security Regulations establish a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step-five to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir.2002). This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education. To assist in the step-five determination, the Social Security Administration

established the Medical-Vocational Guidelines (the Grids), which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). When the Grids do not match the claimant's qualifications, the ALJ can either (1) use the Grids as a framework and make a determination of what work exists that the claimant can perform, *see* Soc. Sec. Ruling 83-14, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577 (9th Cir.1988).

Plaintiff argues the ALJ's hypothetical posed to the vocational expert in this matter "failed to incorporate Plaintiff's hands/fingers impairments, social functioning deficits, and the cognitive limits discussed above." As discussed above, the court finds no error in the ALJ's consideration of the medical evidence regarding either the alleged hand/finger impairment(s) or Plaintiff's alleged mental impairments. Consequently, the court rejects Plaintiff's argument that the ALJ's hypothetical posed to the vocational expert was deficient.

## **CONCLUSION**

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

//

1 imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 11, 2009, as noted in the caption.

DATED this 19th day of August, 2009.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13